UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| BOARD OF TRUSTEES of the PLUMBERS' LOCAL UNION NO. 93 U.A. et al. | ) ) ) | |
| Plaintiffs, | ) ) | Case No. 08 C 6452 |
| v. | ) ) | Judge Joan B. Gottschall |
| S & K PLUMBING CO. et al., | ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION & ORDER

This case involves a dispute over the amount of contributions owed by defendant S & K Plumbing Co. ("S & K") to certain multiemployer, employee benefit funds. The parties have filed cross-motions for partial summary judgment.

### I. BACKGROUND

The Lake County and McHenry County Journeymen Plumbers Local Union 93 of the United Association (the "Union") has entered into a series of collective bargaining agreements with the Plumbing and Heating Contractors Association of Lake and McHenry Counties (the "Contractors Association"). Employers who hire members of the Union and who have subscribed to the collective bargaining agreements are required to pay contributions into various employee benefit trust funds. The trust funds are multiemployer plans as defined by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1002(37). The plaintiffs in this action are the administrators of the trust funds (collectively, the "Trustees").

S & K is a small plumbing service shop in Wauconda, Illinois. On October 18, 1994, Jeffrey Killian ("Killian"), the Secretary/Treasurer and principal shareholder of S & K, signed a subscription agreement, committing S & K to participate in the then-existing collective

bargaining agreement between the Union and the Contractors Association ("1992 CBA").[1] The subscription agreement provided:

### SIGNATORY EMPLOYERS

> For good consideration, the undersigned Employer hereby subscribes to and adopts the foregoing Collective Bargaining Agreement between PLUMBING AND HEATING CONTRACTORS ASSOCIATION OF LAKE AND McHENRY COUNTIES and JOURNEYMEN PLUMBERS, LOCAL UNION NO. 93, and agrees to abide by, and be bound by all of the terms and conditions thereof, and by any amendments thereto, and hereby ratifies and accepts said Collective Bargaining Agreement and the terms and conditions thereof as fully and completely as if the undersigned had been an original party thereto.

(Doc. 52-1 at 14.) The 1992 CBA, to which the subscription agreement refers, provided that the Union will serve as the collective bargaining representative for all covered employees (*Id.* at 18-19); it established rules regarding working conditions (*Id.* at 22-29); and it set prevailing wages for covered employees (*Id.* at 33-34). The 1992 CBA also required employers to make monthly reports to the Trustees on the number of hours worked by covered employees and to pay contributions to the trust funds based on rates set by the agreement. (*Id.* at 32-34.)

When the Union and the Contractors Association drafted the 1992 CBA, they provided that both sides would be bound by the agreement for four years. After that time, the agreement would automatically be extended on a yearly basis, and either party could terminate the agreement by giving the proper notice. Specifically, the 1992 CBA provided:

> This Agreement is effective as of June 1, 1992, and shall remain in full force and effect until May 31, 1996, inclusive and thereafter for successive yearly periods, unless at least sixty (60) days prior to the expiration of the initial period or any yearly period thereafter, either party hereto shall give notice to the other of its intention to modify or terminate the Agreement.

(*Id.* at 30.) At some point, the Union and the Contractors Association negotiated a replacement to the 1992 CBA. The new agreement ("2005 CBA") contained very similar provisions,

---

[1] Jeffrey Killian and Susan Killian are also defendants in this action; however, the Trustees have moved for summary judgment only as to S & K.

although it set new prevailing wages and new contribution rates.[2] (Doc. 54-3 at 16.) The 2005 CBA also provided for a four year term—June 1, 2005 through May 31, 2008—followed by automatic yearly extensions, and either party could terminate by giving sixty days notice before an extension. (*Id.* at 13.) And, eventually, a third agreement ("2008 CBA") was negotiated covering the period June 1, 2008 through May 31, 2012.[3] (Doc. 54-4 at 29.)

According to S & K, in the spring of 2007, the company began to face financial difficulties. Killian avers that he met with representatives of the Union in 2007 and early 2008 "to seek their advise [*sic*] and guidance for terminating our affiliation with the Union." (Killian Aff., Doc. 52-3, ¶ 13.) Killian was told that "ending the Union affiliation was not an option." (*Id.* ¶ 15.) By May 2008, S & K had stopped making monthly payments to the Trustees. On June 26, 2008, the Trustees conducted an audit of S & K and found that the company had failed to pay $46,853.82 in contributions for the period between January 1, 2005 and May 1, 2008. (Doc. 54-7 at 3.) S & K acknowledges that it owes some contributions for this period, but it disputes the amount owed. The Trustees also maintain that S & K is bound by the 2008 CBA and will continue to owe contributions until May 31, 2012. S & K, on the other hand, contends that its obligations ended on May 31, 2008 (or, at the latest, on May 31, 2009).

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The moving party is so entitled if no reasonable fact-finder could return a verdict for the

---

[2] There may have been other agreements in effect between 1996 and 2005, but the parties do not discuss them.

[3] The 2008 CBA was an agreement between the Union and another entity, Plumbing and Mechanical Contractors Authority of Northern Illinois/Midwestern Association for Plumbing, Heating, Cooling Contractors. It is not clear whether this organization is the same as the Contractors Association, but neither party has argued that this fact is significant.

3

nonmoving party." *Patton v. MFS/Sun Life Fin. Distribs., Inc.*, 480 F.3d 478, 485 (7th Cir. 2007). At the summary judgment stage, the court should view the evidence in the light most favorable to the nonmoving party, drawing all inferences in that party's favor. *Cedillo v. Int'l Ass'n of Bridge & Structural Iron Works, Local Union No. 1*, 603 F.2d 7, 11 (7th Cir. 1979).

### III. ANALYSIS

Both S & K and the Trustees have moved for summary judgment. The two principal disputes are (1) whether S & K become obligated under any collective bargaining agreement after the 1992 CBA, and (2) whether S & K properly terminated its obligation before the 2008 CBA took effect.

**A.     Was S & K Bound by Successor Agreements?**

Where a collective bargaining agreement provides that an employer shall make contributions to a multiemployer plan, Section 515 of ERISA requires that payments be made in accordance with the written terms of the agreement. 29 U.S.C. § 1145; *Cent. States, Se. & Sw. Areas Pension Fund v. Gerber Truck Serv., Inc.*, 870 F.2d 1148, 1149 (7th Cir. 1989). S & K argues that it signed only one agreement—the 1992 CBA—and never agreed to any subsequent terms. But S & K ignores the key language in the subscription agreement: S & K agreed to be bound, not only by the 1992 CBA, but also "by any amendments thereto." (Doc. 52-1 at 14.) Inexplicably, S & K's briefs do not discuss the import of this language at all.

The subscription agreement is a very brief document with no explanation of its terms. S & K might have argued that the term "amendments" is ambiguous and was not meant to apply to new agreements which replaced the CBA. Summary judgment is appropriate in a contract dispute only if the court can conclude that the contract is unambiguous. *Cent. States, Se. & Sw. Areas Pension Fund v. Kroger Co.*, 73 F.3d 727, 732 (7th Cir. 1996). "When parties suggest

4

different, yet reasonable interpretations of a contract, the contract is ambiguous." *Id*. But S & K has not put forth any alternative interpretation, nor has it pointed to any evidence suggesting that the Trustees' interpretation is mistaken.

In fact, S & K's actions suggest that it understood itself to be bound by the successor agreements. The Trustees have submitted an affidavit from Scott Spangle, a collection coordinator for the trust funds. Spangle avers that until spring 2008, S & K was making contributions to the funds at rates specified by the 2005 CBA and paid its employees at rates also consistent with the 2005 CBA. (Spangle Aff., Doc. 54-2, ¶ 24.) S & K does not dispute Spangle's contentions. Instead, S & K argues that the Union sent monthly notices calculating the amount of contributions owed, and that S & K accepted the Union's calculations without checking that the proper rates had been used. However, S & K points to no evidence to support this argument.

S & K also argues that the 1992 CBA set only minimum wages, and it was free to pay its employees higher amounts. S & K does not point to any contract provision supporting this reading of the 1992 CBA. The court's own brief examination of the contract suggests that, under the 1992 CBA, S & K was required to pay the prescribed rates. The agreement provided:

> The Employer hereby agrees to employ Journeymen Plumbers at the Local #93 prevailing wage. The rates, hereinafter set forth shall be deemed to be the standard rate to be strictly adhere [*sic*] to.

(Doc. 52-1 at 32.) The 2005 CBA contains an identical provision. (Doc. 54-3 at 15.)

The language of the subscription agreement and S & K's own actions lead the court to conclude that S & K agreed to be bound by, not only the 1992 CBA, but also its successor agreements.[4]

---

[4] Even if the terms of the subscription agreement had not bound S & K to the 2005 CBA, the Trustees point out that S & K subsequently became subject to that agreement, nonetheless. First, "[i]t is 'well established that a

5

**B.     Did S & K Terminate its Obligations Before the 2008 CBA Took Effect?**

The second question is whether S & K effectively terminated its agreement to be bound by amendments to the 1992 CBA before the 2008 CBA took effect on June 1, 2008. S & K argues that Killian informed the Union in fall 2007 that S & K was terminating its participation in the collective bargaining agreement. The Trustees, however, contend that S & K did not seek to terminate the agreement until Killian sent a formal letter sometime in 2008.

The Trustees argue that even if Killian told the Union that S & K was terminating the agreement in 2007, that termination was not effective in ending S & K's obligation to pay into the trust funds. The Trustees are entitled to enforce the collective bargaining agreement as written, without respect any side agreements between Killian and the Union. *Gerber Truck*, 870 F.2d at 1149. The 2005 CBA required S & K to give the Union notice of termination sixty days before the agreement automatically extended on June 1, 2008. There are no other specific requirements in the contract about how a termination must be effected. Thus, if Killian gave the Union notice in fall 2007, S & K would never have become bound by the 2008 CBA. S & K points to Killian's affidavit as evidence that the agreement was terminated:

---

collective bargaining agreement is not dependent on the reduction to writing of the parties' intention to be bound,' . . . rather '[a]ll that is required is conduct manifesting an intention to abide and be bound by the terms of an agreement.'" *Gariup v. Birchler Ceiling & Interior Co., Inc.*, 777 F.2d 370, 373 (7th Cir. 1985) (quoting *Capitol-Husting Co., Inc. v. NLRB*, 671 F.2d 237, 243 (7th Cir. 1982)). S & K identifies no evidence that its conduct varied in any way from terms of the 2005 CBA until the company began suffering financial distress in early 2008. Second, every time S & K sent its monthly contribution to the trust funds, it signed a form stating:

> The undersigned employer hereby warrants that this report accurately states all hours worked by all Local 93 plumbers in its employ. In addition, the employer hereby agrees to be bound to the terms of the *current* collective bargaining agreement executed between the Plumbing and Heating Contractors Association of Lake and McHenry Counties and the Lake County and McHenry County Journeymen Plumbers' Local Union 93 of the United Association. Further, the undersigned hereby expressly accepts and agrees to be bound by the trust agreements governing U.A. 93 Plumbers' Pension and Welfare, et al., and accepts all of the terms thereof with the intention of providing benefits to its U.A. 93 plumbers.

(Doc. 54-6 at 1 (emphasis added).) As already explained, Section 515 of ERISA permits the Trustees to rely on this written agreement and enforce S & K's obligation.

6

> 13. On behalf of S & K Plumbing Co., I began conversations with representatives of Plumbers Local Union No. 93 to seek their advise [*sic*] and guidance for terminating our affiliation with the Union. The costs of continued affiliation with the Union were becoming prohibitively expensive.
>
> 14. I had meetings with Richard Flament at the Union's offices in Yolo, Ilinois during the months of June, July and August, 2007. No advice was given to me as to how to leave the Union. I was encouraged to retain the Union affiliation. The Union representative would not discuss possible changes and/or modifications to the Collective Bargaining Agreement to address our financial situation.
>
> 15. The Union representative role previously held by Richard Flament was transferred to Lynn Karner in late summer or early fall, 2007. I began having similar conversations with Lynn Karner beginning in October, 2007. These discussions involved S & K Plumbing's' [*sic*] inability to continue to fund Union Welfare and Benefit Fund obligations, and the need for the Company to terminate its Union affiliation. I was advised that ending the Union affiliation was not an option.
>
> 16. During the months of April, May and June, 2008 I continued to hold meetings with Lynn Karner as well as Scott Spangle, a Senior Union Official. The nature of the conversations were the same with respect to the growing indebtedness of S & K Plumbing Co. to the Union's Welfare and Benefit Funds, and the need to end the Company's Union affiliation. I was told that withdrawing from the Union was not an option. I was advised to continue to make payments as best we could. I advised both Lynn Karner and Scott Spangle that the situation was absolutely unacceptable and needed to change.

(Killian Aff. ¶¶ 13-16.) These averments certainly suggest that Killian considered terminating the collective bargaining agreement, and that he discussed the matter with the Union. However, there is no averment that Killian ever made the decision to terminate and communicated that decision to the Union. Even viewing this affidavit in the light most favorable to S & K, there is no evidence from which a jury could make the inference that S & K actually terminated its obligation before June 1, 2008.

Both parties agree that, after June 1, Killian sent a letter to the Union terminating the agreement. They dispute the exact month that the letter was received; however, even accepting S & K's version of the facts, the letter did not arrive until July 15, 2008. By that time, S & K

7

had become bound by the 2008 CBA which does not permit the agreement to be terminated until May 31, 2012. Accordingly, the court concludes that S & K did not effectively terminate the agreement and remains obligated to pay contributions to the Trustees throughout the term of the 2008 CBA.

In addition to the amount of overdue contributions calculated by the June 26, 2008 audit, the Trustees contend that they are entitled to conduct a new audit to determine the amount of overdue contributions incurred since June 1, 2008. They also seek liquidated damages, interest, attorney's fees, and costs. S & K does not contest that the 2008 CBA, if it is bound by it, gives the Trustees these rights. The Trustees have submitted an accounting of its attorney's fees with their reply brief, but S & K has asked for an opportunity to respond if the court grants summary judgment for the Trustees. After judgment is entered in this case, the parties should confer to see if an agreement can be reached on the amount of fees and costs. If no agreement is reached, the Trustees may file a petition for fees in conformity with Local Rule 54.3.

## IV. CONCLUSION

The Trustees motion for summary judgment is granted. S & K's motion for summary judgment is denied.

ENTER:

                                        /s/
                                  JOAN B. GOTTSCHALL
                                United States District Judge

DATED: March 2, 2011